LOTTINGER, Judge.
This is a workmen’s compensation suit wherein the plaintiff seeks benefits for the loss of sight in his left eye. The prayer of the petition seeks judgment in solido against the defendants, the Iowa Mutual Insurance Company, alleged compensation insurer of the plaintiff’s employer, and C. M. Handley, local agent for the insurer. Exceptions of no cause and no right of action which were filed by both defendants were sustained as to the latter and overruled as to the former. The Iowa Mutual Insurance Company then answered setting up the defense that it was not the compensation insurer of plaintiff’s employer at the time of the accident. In addition, it filed a third party petition naming C. M. Hand-ley as a third party defendant alternatively seeking recovery of any amount for which it might be held liable to Landry.
The Lower Court rejected all of plaintiff’s demands against Iowa Mutual and further rejected the latter’s third party demands. The plaintiff has appealed and Iowa Mutual, seeking affirmance of the judgment rejecting the principal demand, appealed from that part of the decision rejecting its third party demand.
The plaintiff contends that on September 12, 1955, Mrs. Handley, as agent for the Iowa Mutual Insurance Company entered into an oral contract with the plaintiff’s employer, binding the insurance company from and after that date for workmen’s compensation insurance on the construction project that the employer was about to begin. The defendants, on the other hand, denied that there was any such agreement and that is the primary issue to be resolved.
The following facts appear to be undisputed :
C. M. Handley, a real estate and insurance agent of Lake Charles, entered into an Agency Contract with Iowa Mutual Insurance Company effective October 1, 1952. The Contract was executed for Iowa Mutual Insurance Company by W. J. Perryman and Company, Inc., its General Agent for Louisiana. At the time the Agency Contract was originally made in 1952, it did not provide for the writing of workmen’s compensation insurance. Iowa Mutual was not permitted to write workmen’s compensation insurance in Louisiana until September 1, 1955.
*264 Having been permitted at that time to write workmen's compensation coverages in the State of Louisiana on September 1, 19SS, Iowa Mutual informed all of its Louisiana Agents of that fact and issued an amendment to the Agency Contract to that effect.
In the original Agency Contract it is provided, inter alia, as follows:
“IS. The Agent agrees to pay a reasonable attorney’s fee if the General Agent deems it necessary to and does employ an attorney to enforce the obligations of this contract, such fee shall, however, be not less that 15% of any amount that may be due by the Agent.
“16. The Agent shall not, either in writing or otherwise, alter any condition and provision of any policy, certificate, binder or contract issued by or through him or by the Company or General Agent unless specifically authorized to do so in writing by the Company or by the General Agent, nor shall he insure in any manner any class of risks or any particular risk which the Company or its General Agent has instructed him not to insure, and the Agent agrees to indemnify and save harmless the Company and its General Agent against any loss or damage arising out of or as a proximate consequence of the failure of the Agent to abide by the provisions of this paragraph.”
At the same time that Iowa Mutual’s Louisiana Agents were notified that workmen’s compensation insurance could be written, Iowa Mutual sent to all such agents a copy of its Prohibited List. The purpose of the Prohibited List is to advise all agents that certain workmen’s compensation coverages would not be accepted by the company. Among the coverages on the Prohibited List are the following:
“Construction of Private Residences by owners not acceptable.
“Construction contractors not acceptable unless the' estimated annual premium is at least $200'; and the premium adjusted on the monthly or quarterly payroll plan and concurrent General Liability Insurance is written.”
On September 12, 1955, Cleveland (Cleven) Guillory called upon the Handley Real Estate and Insurance Agency about insurance on a house that he was building. There is a serious conflict in the testimony between Guillory and Mrs. C. M. Handley, who actually conferred with Guillory. His version of the transaction was as follows:
“Q. Tell us what happened when you went back in the afternoon ? A. I had an abstract. I handed it to her and she got the location of the place. She said she would go ahead and write me out.
“Q. Did she say anything about Mr. Handley not being there? A. She said she wasn’t there, and she said he told her to go ahead and write it out.
“Q. Did áhe tell you how much it would cost? A. Yes.
“Q. How much? A. I believe it was $81.00. Something close to that.
“Q. Did you make a payment to her at that time? A. Yes, I paid the whole amount.
“Q. Did you ask the lady anything about when you could start work? A. Yes.
“Q. What did you ask her? A. I asked her when could my men go to work. She said ‘Right now,’ but it was late in the afternoon. She said that ‘all your men would be covered except you.’ I wouldn’t be covered.
“Q. What, if anything, did she tell you about making an application or sending in a request for insurance? A. She hadn’t talked about that.
‡ ‡ # ‡ #
“Q. When you went to the office that afternoon and you talked this matter over with Mrs. Handley did she *265 tell you she would have to send in an application to the company for your insurance? A. No.
‡ * * * *
“Q. Did she say she would have to ask the company? A. She didn’t tell me that.
“Q. Did she tell you she would have to send in a request to the company for the insurance? A. No.”
On the other hand, Mrs. Handley relates the transaction with Guillory as follows :.
“Q. Tell me exactly what happened. A. Cleveland Guillory came into our office around five o’clock on September 12th asking for insurance. He asked for insurance to cover his men building a house. I asked him if he wanted builder’s risk insurance and he said he wanted the same kind as his brother’s. His brother had builder’s risk. He said he wanted insurance covering men working on the house. I told him if it was workmen’s compensation he wanted, I could not issue it, that we were licensed but I had not received the application forms and I couldn’t issue the policy, but I could take his application and write a letter to the company, and that would be the best I could do.
“Q. What did he say to that? A. I asked him where he had his builder’s risk, and asked him why he didn’t get it there, and he said since he was in our office he would just as soon make application through us. I took the information. He wanted to pay for it. I could only estimate what it was. I didn’t have the rating book. I estimated it for him and he gave me a hundred dollar bill. I sent my son to get the change and wrote out a receipt for it as a deposit on the application. I told him he would not be covered until the policy was issued.
“Q. Did you ever tell him he was covered from the time he gave you the money? A. No, I told him several times clearly and plainly that I had no authority to cover him and he would not be covered until he received the policy.
“Q. Did he tell you when he was starting work? A. He said the next day.
“Q. Did you tell him anything about the time his coverage would commence? A. No; with the exception that it would commence when he received the policy.
* Hs * ‡ *
“Q. Did you ever indicate or imply to Mr. Guillory that he was covered from the time he came into your office ? A. No.
“Q. What did you tell him about his being covered by workmen’s compensation? A. I told him he would be covered when he received the policy.”
Mrs. Handley on the same day (September 12, 19SS) wrote Iowa Mutual’s General Agent for Louisiana, W. J. Perry-man and Company, Inc., as follows:
“Handley Insurance Agency — P. O. Box 434 — Lake Charles, La. September 12, 1955 — W. J. Perryman & Co., Inc. 2211 Magnolia Ave., South Birmingham 5, Ala. Gentlemen: Re: Workmen’s Compensation. Sometime ago we returned amendment to our Agency Contract including Workmen’s Compensation to our Contract.
“We do not have the forms upon which application is made for this coverage or any other forms in connection with this coverage. However, we have an application for a Workmen’s Compensation Policy, and would appreciate your issuing same for us.
“It is to be issued for eleven Manuel, Rt. 3, Box 141 Z, Lake Charles, La. He will have three men working for him on the construction of a house, *266 two carpenters and a helper and himself. He estimates that his total payroll will amount to $1,800.00. This construction is to be located on the south half of the NEJ4 of SEj4 of Sec. 9, Township 11 South, Range 9 West, or on the Big Lake Road.
“If there is any further information that you desire, please advise us and please rush, as the construction on this property will start on September 13th.
“Thanking you for your usual prompt cooperation, we remain,
“Very truly, /s/ C. M. Handley, CMH/emh”
On September 16, 1955, Iowa Mutual replied by letter as follows:
“W. J. Perryman & Company, Inc. 2211 Magnolia Avenue, South Phone: 54-7572 Birmingham, Alabama, September 16, 1955. Handley Insurance Agency, P. O. Box 434, Lake Charles, Louisiana. Gentlemen: Re: Workmen’s Compensation Coverage, Cleven Manuel, Rt. 3, Box 141 Z, Lake Charles, Louisiana. We are in receipt of your letter dated September 12, 1955, requesting policy issuance for the above assured.
“This is to advise that construction of private residences by owner is on the Iowa Mutual Prohibited list and therefore we would be unable to issue this policy for you.
“We are sincerely sorry not to be able to assist you in this matter and trust that you will have facilities to place this coverage elsewhere.
“Yours very truly, W. J. Perryman & Company, Inc. /s/ Else Martin,
“Else Martin, Underwriting Department, EM :AMT”
Upon receipt of that letter Handley Insurance Agency returned to Guillory the deposit that he had made. In the meantime, however, the plaintiff, Irving Landry, had been injured on September 18, 1955.
With the evidence above set out before him, the trial judge concluded that Mrs. Handley had not agreed to bind the Iowa Mutual Insurance Company for Workmen’s Compensation and with this finding, we are in full accord. We are impressed first of all by the fact that both Mr. and Mrs. Handley readily admitted that they had no authority to bind the Iowa Mutual for Workmen’s Compensation coverage, an admission most detrimental to them in view of the third party demand. We are further impressed by the verbiage of the letter by Mrs. Handley to Iowa Mutual on September 12, 1955 ; (at which time no controversy existed), which contained the following:
“We do not have the forms upon which application is made for this coverage or any other forms in connection with this coverage. However, we have an application for a Workmen’s Compensation policy and would appreciate your issuing same for us.” (Emphasis added.)
The actions of plaintiff’s employer, Guillory, are also revealing in that he displayed obvious concern about the policy’s arrival, which would have been of no moment had a binder been issued as contended by the plaintiff.
It is our understanding of the law that an application for insurance is not a contract of insurance but merely a proposal by the applicant for the issuance of coverage. A contract is not made until the application is accepted by the Company. No contract is complete without the consent of both parties. LSA-C.C. Art. 1766; Monte-Janssen v. Continental Casualty Co., 5 Cir., 203 F.2d 191.
The finding appealed from is a factual one and there is certainly no manifest error in it.
Accordingly, the judgment appealed from is affirmed.
Judgment affirmed.