LOTTINGER, Judge.
This is a suit on an alleged insurance contract for death benefits.. The petitioner is Modenia Upton, the surviving widow and alleged beneficiary of the deceased, and the defendant is the Fidelity Standard Life Insurance Company.
The Lower Court rendered a summary judgment in favor of defendant and dismissed the petitioner’s suit. The petitioner has taken a devolutive appeal.
The petitioner alleges that on May 27, 1964, Samuel Upton, the deceased, paid $17.52 in cash and signed eleven postdated checks, each in the sum of $17.52, which he gave to Charles C. Montegut, the agent of the defendant insurance company. She alleges that a life insurance contract was thereupon entered into between her deceased husband and the defendant, whereby the defendant insured the life of deceased in the sum of $5,000.00, and further providing for double indemnity should the insured die by accidental means.
The petitioner further alleges that the cash payment of $17.52 was accepted by defendant, and the first postdated check was cashed by defendant. The record discloses that Samuel Upton, the alleged insured, died by accidental drowning on July 9, 1964.
Attached to the petition was a request for certain admission of facts.
The defendant filed an answer to the petition, as well as an answer to the request for admission of facts. The position therein taken by defendant is to the effect that Charles C. Montegut was employed by defendant as an insurance agent, but was only authorized to issue receipts for applications for life insurance coverage, to accept deposits therefor, and that he had no authority to bind the insurance company to any insurance contracts. The company admits that an application for life insurance coverage was secured from, deceased by Mr. Montegut but that the contract applied for would not be in force or of any effect until the date of approval of the application by the home office of the defendant company. The defendant also admits that Mr. Monte-gut accepted the cash sum of $17.52 as well *299 as the eleven postdated checks, but contends that same were only deposits which were conditionally accepted by Mr. Montegut on the condition that a policy of insurance would subsequently be issued by the company on the life of deceased. Defendant takes the position that its action in cashing the first postdated check was merely routine office procedure and was not for the purpose of accepting the application or in any way changing the conditions thereof.
In support of its contention that no life insurance contract had been entered, the defendant refers to certain paragraphs' contained in the application as well as the receipt for payments made by deceased, which will be set forth hereinafter, ánd further refers to the facts that on June 3, 1964 Mr. Roland Fink, President of the defendant company wrote a letter to deceased in which he acknowledged receipt of the application for life insurance and stating that the company would notify him as soon as the application had been approved and accepted. In addition thereto, on June 5, 1964, Mr. T. A. Dechman, Executive Vice-President of defendant company,- sent a letter to deceased in which the deceased was requested to undergo a complete physical examination which would be required prior to the issuance of the life insurance policy.
The application which was completed by deceased and handed to Mr. Montegut, as aforesaid, was entitled “Application to Fidelity Standard Life Insurance Company”. The application contained the following wording:
“I further agree that no obligation shall exist against said Company on account of this application, although I may have paid premiums thereon, unless said Company shall issue a policy in pursuance thereof, and the same is delivered to me while my dependents and I are in sound health.”
The first paragraph printed on the receipt, which is attached to the aforesaid application, contains wording as follows:
“FIRST: If a full first premium in accordance with the published rates of the company for the form of policy applied for in Question 22 has been paid in cash to an authorized agent of the company at the time the application is made and declaration of such payment is made therein, and the application is thereafter approved by the home office of the company for the plan and amount and at the rate applied for, and provided the applicant is on the date of such approval in good health and acceptable to the company under its rules, * * * the insurance subject to the terms and conditions of the contract applied for and in use by the company at the time, will be in force from the date of such approval for the amount applied for * * * otherwise the payment evidenced hereby shall be paid upon demand and surrender of this receipt.”
On the rear of this receipt is a form entitled “Agreement Contained in Application,” in which Paragraph One provides, in part, as follows:
“ * * * the company shall hot be bound in any way by any statements, promises or information made or given by or to any agent or other person at any time unless the same be reduced in writing and submitted to the company at its home office and made a part of such contract. Only the President, a Vice President, the Secretary, or Assistant Secretary of the Company may make, modify or discharge contracts or waive any of the compány’s rights or requirements, and then only in writing.”
Paragraph Three of said agreement provides :
“If the Company shall so require, I agree to submit to a medical examination by an authorized examiner of the Company and agree that statements made to such examiner shall be a continuation of this application.”
The above mentioned application as well as the receipt thereto attached is attached to and made a part of the answers to the request and admissions which was filed by defendant.
*300 On July 13, 1964 the defendant company forwarded a check to Mrs. Samuel Upton in the sum of $35.04, representing the return of the cash deposit as well as the first postdated check which was cashed by the company.
The defendant filed a motion for summary judgment, which was granted by the Lower Court, resulting in this appeal.
In Monte-Janssen v. Continental Casualty Company, 203 F.2d 191, the United States Fifth Circuit Court of Appeals affirmed the judgment of the Lower Court in favor of the defendant denying recovery in an action by a widow of an applicant for life insurance coverage, seeking to reco ver insurance benefits and penalties because of the insurer’s failure to pay a claim for insurance, wherein the insurer had denied the existence of policies on the grounds that the applications had not been accepted prior to the applicant’s death. That was substantially the same situation with which we are now- concerned. In that case, the Court stated as follows:
“Whatever may be the rulings of courts in other jurisdictions, the Courts of Louisiana have held that an application for insurance does not represent a contract of insurance but is merely a proposal by the applicant to induce the insurer to issue a policy of insurance. Such proposal does not become a contract until it is accepted by the party to whom it is made. Stockton v. Firemen’s Ins. Co., 33 La. Ann. 577. Whether an insurer will enter into a contract with a particular individual, is generally a matter resting within the discretion of the insurer. The application is considered to represent a part of the antecedent dealings between the applicant and the insurer, but it does not constitute a contract of insurance,— remaining only a proposal until it is accepted by the insurer. C. Todd v. Piedmont & Arlington Life Ins. Co., 34 La. Ann. 63. The death of the applicant prior to acceptance of the offer, does not abrogate the right of the insurer to reject the offer. Art. 1810, LSA-Civil Code of Louisiana; Stockton v. Firemen’s Insurance Co., supra; Foster v. Morrison, La. App., 145 So. 13.”
'An application for insurance coverage is governed by the general rules of contract. A contract requires an offer and an acceptance and an application for insurance is not a contract of insurance but merely a proposal or offer by the applicant for the purchase of insurance. The contract is not made until the application is accepted by the company, as no contract is complete without the consent of both parties. Landry v. Handley, La.App., 100 So.2d 262: Louisiana Civil Code Article 1766.
We feel that the filing of the application which was submitted by the deceased, as well as the receipt which was handed him by the agent, shows without any question that this was merely an application for insurance coverage and it was not to be considered as a binding insurance contract until the acceptance thereof by the home office of the company. It was clearly stated therein that the company would not be bound by any statements or promises made by an agent unless same was reduced to writing and submitted to the company and approved by its proper official.
Furthermore, the subsequent action on the part of the company discloses without any shadow of a doubt that there was no insurance contract in force by the letters written the deceased by the insurance company on June 3, 1964 and June 5, 1964, both of which advised him that the application had not yet been approved, and the latter of which was to the effect that it would not be approved until he had completed a. medical examination. During the period in excess of one month following the latter letter, the deceased failed to take a medical examination.
Article 966 et seq. of the Louisiana Code of Civil Procedure provides for the procedure for summary judgments, and further provides that such judgment 'shall be *301 rendered if the pleadings, depositions and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. Based upon the pleadings on file, particularly the admissions of fact filed by defendant, as well as the affidavits filed by both parties herein, we conclude that there is no genuine issue of fact presented and that the Lower Court was correct in rendering a summary judgment in favor of defendant.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal shall be paid by petitioner.
Judgment affirmed.